**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | |
| **INSILCO TECHNOLOGIES, INC.,** | : | |
| **et al.**, | : | |
| | : | Bankruptcy No. 02-13672 (KJC) |
| Debtor | : | |
| | : | |
| **AMPHENOL CORPORATION and** | : | |
| **AMPHENOL TECHNICAL** | : | |
| **PRODUCTS INTERNATIONAL CO.,** | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **CHAD SHANDLER, AS TRUSTEE** | : | |
| **OF THE INSILCO LIQUIDATING** | : | |
| **TRUST - UNSECURED CREDITORS** | : | |
| **SERIES,** | : | |
| | : | |
| Defendants | : | Adversary No. 05-52403 (KJC) |

# MEMORANDUM[1]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

### Background

On December 14, 2004, Defendant Chad Shandler, as Trustee ("Trustee") for the Insilco Liquidating Trust ("Trust"), commenced an adversary proceeding against Precision Cable de Mexico ("PCM") (Adv. No. 04-57713) (the "Preference Adversary") seeking to recover payments totaling $1,176,582.10 allegedly made by the Debtor (Insilco Technologies, Inc., *et*

---

[1] This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(F), (N) and (O).

*al.*) to PCM, which, at the time of such payment, was a subsidiary of the Debtor, but which did not seek chapter 11 relief with the Debtor. In 2003, during the course of this chapter 11 case, the plaintiffs, Amphenol Corporation and Amphenol Technical Products International Co. (jointly referred to herein as "Amphenol"), acquired from the Debtor, among other assets, the capital stock of PCM (the "PCM Shares"). On August 24, 2005, Amphenol commenced this adversary proceeding ("Declaratory Relief Action"), seeking, *inter alia*, to enjoin the Preference Adversary. Amphenol asserts that the December 15, 2002 Stock and Asset Purchase Agreement ("Sale Agreement") under which the PCM Shares were purchased and the Order dated March 7, 2003 ("Sale Order") approving the Sale Agreement preclude such a claim.

Now before the Court is the Trustee's Motion to Dismiss under Fed.R.Civ.P. 12(b)(6), or, in the alternative, for judgment on the pleadings under Fed.R.Civ.P. 12(c) (Docket No. 14) ("Motion"). For the reasons which follow, the Motion will be granted.

## Standards - Motion to Dismiss and Judgment on the Pleadings

A motion to dismiss for failure to state a claim upon which relief can be granted is governed by Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b). In considering a Rule 12(b)(6) motion to dismiss, the court "must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3rd Cir. 1989). "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002), citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

A complaint should be dismissed only if the plaintiffs can prove no set of facts in support

of their claim that would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957). The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the complaint." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002), citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). When considering a motion to dismiss, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Commonwealth of Pa., ex real. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988), citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984).

Fed.R.Civ.P. 12(c), also made applicable hereto by Fed.R.Bankr.P. 7012, provides that: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment on the pleadings will be granted only if the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In ruling upon motion for judgment on the pleadings, court must accept all well-pleaded factual allegations in the complaint as true, and must draw all inferences in the light most favorable to the non-moving party, but need not accept unsupported or sweeping legal conclusions. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. In re Roberson, 262 B.R. 312, 318 (Bankr. E.D.Pa. 2001) (citation omitted); Greer v. Shapiro & Kreisman, 152 F.Supp.2d 679, 682 (E.D.Pa.2001).

Whether a motion should be considered as a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c) depends upon the timing of the motion. Yanes v. Minute Maid Co., 2006 WL 1207992, *2 (D.N.J. May 3, 2006). Rule 12(b)(6) motions

should be filed before any responsive pleading, while Rule 12(c) motions may be filed after a responsive pleading is filed. Id. In this case, the Motion was filed before the Trustee filed an answer to the complaint, but after Amphenol's motion for a preliminary injunction and the Trustee's response opposing the motion. Regardless of which motion is appropriate, the same standard applies. Id. Because no answer to the complaint has been filed yet, the Court will consider the Motion as one to dismiss for failure to state a claim under Rule 12(b)(6).

### Factual Allegations and Relief Requested

The complaint filed in the Declaratory Relief Action ("Complaint") alleges, in pertinent part, as follows:

(1) Prior to the Petition Date [December 16, 2002], the Plaintiffs, as buyers, and Insilco Technologies, Inc., T.A.T. Technology Inc., Insilco International Holdings, Inc., and Precision Cable Mfg. Co., Inc., as sellers, entered into the Sale Agreement [dated as of December 15, 2002]. Pursuant to the Sale Agreement, Plaintiffs agreed to purchase certain Purchased Assets as well as all the issued and outstanding PCM Shares, subject to this Court's entry of an order pursuant to Bankruptcy Code § 363(b) authorizing the transfer of the Purchased Assets and Shares free and clear of all liens, claims and encumbrances, other than Closing Encumbrances (as defined in the Sale Agreement).

Complaint, ¶11.

(2) On December 19, 2002, the Debtor filed a motion pursuant to Bankruptcy Code §§ 363(b), 365, and 105(a) and Bankruptcy Rules 2002, 6004, 6006, and 9014, requesting this Court's approval of, inter alia, bidding procedures and the form

and manner of the sale of the Purchased Assets and the Shares.  The Court entered an order on January 30, 2003, and an amended order on February 20, 2003, approving the Sale Motion, and an auction was held on March 3, 2003.  The Plaintiffs were the "stalking horse" bidder.  The Debtor, after reviewing all offers, concluded that the Plaintiffs' offer was the highest and best offer for the Purchased Assets and the Shares.  The Court conducted a hearing regarding the proposed sale on March 7, 2003, and on that same day entered the Sale Order approving the sale of the Purchased Assets and the Shares to the Plaintiffs.

Complaint, ¶12.

    (3)    Pursuant to the express terms of the Sale Order, the Court found as a matter of fact that:

> ***The transfer of the Purchased Assets and the Shares*** to the Buyers under the Sale and the Sale Agreement will be a legal, valid, and effective transfer of the Purchased Assets and the Shares and will, . . . subject to the last sentence of Paragraph 16 of this Sale Order, vest in the Buyers all right, title and interest of the Debtor in the Purchased Assets and the Shares ***free and clear of any and all liens*** (including mechanics', materialmen's and other consensual and non-consensual liens and statutory liens), ***security interests, encumbrances and claims*** (including, but not limited to, any "claim" as defined in § 101(5) of the Bankruptcy Code), . . . ***preferences***, . . . causes of action and claims, to the fullest extent of the law, in each case whether secured or unsecured, choate or

5

> inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, known or unknown, whether arising prior to, on, or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Interests") other than the Closing Encumbrances and the claims and interests described in the last sentence of Paragraph 16 of this Sale Order . . .. ***Except as specifically provided in the Sale Agreement or this Sale Order, the Buyers shall not assume or become liable for any Interests relating to the Purchased Assets and the Shares Being sold by the Sellers.***

Sale Order at ¶ J (emphasis added by Amphenol).

The Court also concluded as a matter of law that:

> Pursuant to Bankruptcy Code sections 363 and 105, title to the Purchased Assets and the Shares shall pass to the Buyers at closing, ***free and clear of all Transferred Interests, with all Transferred Interests to be unconditionally released, discharged and terminated as to the Purchased Assets and the Shares***, and with all Transferred Interests to attach only to the proceeds of the transaction.

Sale Order at ¶ 4 (emphasis added by Amphenol).

The Sale Order includes the word "preferences" in its definition of "Transferred

>> Interests." Sale Order at ¶ J. The Sale Order also provides that its terms "shall be binding on the Debtor and the Debtor's estates (including . . . any chapter 7 or chapter 11 trustees appointed in these cases.)" Sale Order at ¶¶ 12, 19.

Complaint, ¶13.

> (4) Shortly after the entry of the Sale Order, the Plaintiffs and the Debtor closed the sale and transfer of the Purchased Assets and the Shares, according to the terms of the Sale Agreement and the Sale Order. The Plaintiffs ultimately agreed to pay approximately $10,000,000 (subject to adjustment) for the Purchased Assets and Shares. These proceeds from the sale of the Purchased Assets and the Shares provided a significant amount of money to the Debtor's estates, and facilitated the completion of the Debtor's Chapter 11 cases and the confirmation of the Plan.

Complaint, ¶14.

Specifically, the Declaratory Relief Action Complaint seeks the following relief:

(a) that this Court enter a judgment declaring that pursuant to the Sale Order and the Sale Agreement, the Liquidating Trustee has expressly and permanently released the Plaintiffs from any liabilities arising under Bankruptcy Code § 547(b) relating to the Purchased Assets and Shares;

(b) that this Court enter a judgment declaring that pursuant to the Sale Order and the Sale Agreement, that the Plaintiffs possesses all right, title and interest of the Debtor in the Purchased Assets and Shares free and clear of any and all liens, security interests, encumbrances and claims, including preferences arising under Bankruptcy Code § 547(b); and

(c) that this Court enter injunctive relief restraining and enjoining the Liquidating Trustee from continued prosecution of the Preference action.

The Trustee's Motion seeks dismissal, or in the alternative, judgment on the pleadings, of the Declaratory Relief Action, arguing that:

    (1)    Amphenol does not have standing to seek relief in the Declaratory Relief Action, since the Trustee has asserted no claims against Amphenol in the Preference Adversary;

    (2)    The Bankruptcy Court does not have jurisdiction to grant the relief requested in the Declaratory Relief Action because PCM is not a debtor;

    (3)    The Sale Order does not insulate PCM (or Amphenol) from the Preference Adversary because (a) the language in the Sale Order transferring the Purchased Assets and Shares "free and clear of any and all liens" applies to the shares of PCM and not to the entity PCM; (b) the Trustee's claim does not seek recovery from the Purchased Assets or Shares; and (c) the term "Buyer" as defined in the Sale Order does not include PCM, so PCM is not entitled to any release or protection the Sale Order grants in favor of the Buyer.

## Discussion

1.    <u>Standing.</u>

The Trustee challenges Amphenol's standing to bring the Declaratory Relief Action, arguing that no case or controversy exists between the parties. The Third Circuit Court of Appeals has espoused three requirements to have standing: (1) the plaintiff must demonstrate "injury in fact" - - a harm that is both concrete and actual or imminent, not conjectural or hypothetical; (2) the plaintiff must establish causation, tracing the connection between the injury and the alleged conduct of the defendant; and (3) the plaintiff must demonstrate a substantial likelihood that the requested relief will remedy the alleged injury. <u>Chadwick v. Janecka</u>, 312 F.3d 597, 602 (3d Cir. 2002) (citing <u>Vermont Agency of Natural Resources v. United States ex. rel. Stevens</u>, 529 U.S. 765, 771 (2000)). In a declaratory judgment action, standing is present when there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Golden v. Zwicker</u>, 394 U.S. 103, 108 (1969).

Amphenol has standing to bring this Declaratory Relief Action. There is an actual controversy between the parties regarding their rights under the Sale Agreement and Sale Order. The alleged injury to Amphenol's rights under the Sale Agreement and Sale Order is not remote or hypothetical, but is "actual or imminent." Amphenol has established causation sufficiently, and has further established that the requested relief, declaratory and injunctive, would remedy the alleged injury of Amphenol - - that of being deprived of the benefit of its bargain with the Debtor. The controversy between Amphenol and the Trustee, both parties to the Sale Agreement, regarding their competing positions on interpretation of language in the Sale Agreement and Sale Order, and the pendency of the Preference Adversary against PCM, is of sufficient immediacy to warrant consideration of Amphenol's Declaratory Relief Action.

2.   <u>Jurisdiction.</u>

The Trustee also challenges this Court's jurisdiction to hear and decide this adversary proceeding, arguing that PCM has not sought bankruptcy relief and, therefore, its assets are not within the jurisdiction of this Court. The Declaratory Relief Action, however, seeks to enjoin the Trustee from pursuing the Preference Adversary, in which PCM is a defendant, based upon an interpretation of the Sale Agreement and the Sale Order.

Bankruptcy courts have subject matter jurisdiction to interpret and enforce their own orders. <u>In re Allegheny Health, Education and Research Foundation</u>, 383 F.3d 169, 175-76 (3d Cir. 2004) (holding that a bankruptcy court had jurisdiction to consider a "core proceeding" that required the court to interpret and give effect to its previous sale orders"); <u>In re Texaco, Inc.</u>, 182 B.R. 937, 944 (Bankr. S.D.N.Y. 1995) (recognizing that "it is essential for a bankruptcy court to have jurisdiction to adjudicate controversies respecting, and to enforce, its own orders"); <u>In re</u>

Johns-Manville Corp., 97 B.R. 174, 180 (Bankr. S.D.N.Y. 1989) (deciding that a bankruptcy court retains post-confirmation jurisdiction to enforce its own orders in aid of their proper execution). Accordingly, this Court has jurisdiction to hear and determine the Declaratory Relief Action which requires interpretation of the court-approved Sale Agreement and the Sale Order.

Moreover, I conclude that this proceeding is core, thereby allowing the Court to enter a final judgment. 28 U.S.C. §157(b).[2] To determine if a matter is core, a court may consult two sources. First, the court should review the "illustrative list" of proceedings that are considered core as set forth in 28 U.S.C. §157(b)(2)(A) through (O). Second, a court should consider whether the proceeding either (a) invokes a substantive right provided by title 11, or (b) is one that, by its nature, could arise only in the context of a bankruptcy case. Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999) (citations omitted). If a claim falls within any of the foregoing, it will be considered core. See n.1, supra.[3]

3. **Analysis of the Sale Agreement and Sale Order.**

Amphenol argues that the only reasonable interpretation of the Sale Agreement and the Sale Order provides that the Debtor, along with its successors and assigns, released or waived its

---

[2]In the Allegheny Health decision, the Third Circuit Court of Appeals explained:

> A bankruptcy court may hear both core and non-core matters, and whether a particular proceeding is core represents a question wholly separate from that of subject matter jurisdiction. The significance of the distinction between core and non-core jurisdiction is that in core proceedings the bankruptcy court can enter a final judgment, whereas in non-core proceedings the bankruptcy court's power is limited to submitting proposed findings of fact and conclusions of law to the district court for entry of a final order after de novo review (unless the parties consent to adjudication by the bankruptcy judge).

Allegheny Health, 383 F.3d at 175 (citations and internal quotations omitted).

[3]The parties do not argue, and I do not perceive, that the boundaries of this Court's exercise of post-confirmation jurisdiction here violates the limitations imposed by In re Resorts International, Inc., 372 F.3d 154 (3d Cir. 2004).

right to bring a preference claim against PCM.  The Sale Agreement provides that, upon payment of the Purchase Price, Amphenol would "purchase and acquire from [the Sellers], free and clear of all Encumbrances (except for Closing Encumbrances), all of the right, title and interest that [the Sellers] possess in the Shares."[4]  (Agreement of Sale, §2.1).  The term "Encumbrances" as defined in the Sale Agreement includes "claims."[5]

Similarly, the Sale Order provides that Amphenol was receiving "all right, title and interest of the Debtors in the Purchased Assets and Shares free and clear of any and all...Interests...."  The term "Interests" includes "preferences."[6]  The Sale Order further

---

[4] The "Shares" are defined in the Sale Agreement as "all of the issued and outstanding equity securities of Precision Cable Mfg. Corp. de Mexico, S.A. de C.V., a Mexican Corp."  (Sale Agreement, Preamble).  Amphenol also purchased certain assets, known as the "Purchased Assets," and defined in §2.2 of the Sale Agreement as all "real, personal, tangible and intangible property or assets of every kind and description, wherever located, used, developed for use or intended for use primarily in the conduct of the Business ... unless specifically excluded...."  The "Business" is defined in the Sale Agreement as "the Seller Parties' business and activities as conducted on the date hereof at its facilities in (i) Lake Wales, Florida, (ii) Rockwall, Texas, (iii) Montreal, Canada, and (iv) Reynosa, Mexico, which includes the design, manufacturing and distribution of custom cable assemblies to a variety of customers, including original equipment manufacturers and electronic manufacturing service providers."  (Sale Agreement, §1.1).

[5] The complete definition of Encumbrances in the Sale Agreement means "any mortgages, hypothecs, pledges, liens, claims (including options and rights of first refusal), charges, security interests, conditional and installment sale agreements, activity and use limitation, conservation easements, servitudes, deed restrictions, equitable interests, exceptions to title, encumbrances and charges of any kind."  (Sale Agreement, §1.1).

[6] The complete definition of "Interest" in the Sale Order provides that the Shares and Purchased Assets are transferred free and clear of:
> any and all liens (including mechanics', materialmen's and other consensual and non-consensual liens and statutory liens), security interests, encumbrances and claims (including, but not limited to, any "claim" as defined in §101(5) of the Bankruptcy Code), reclamation claims, mortgages, deeds of trust, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, contracts, offsets, recoupment, rights of recovery, judgments, orders and decrees of any Court or foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, licenses, options, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action and claims, to the fullest extent of the law, in each case whether secured or unsecured,

11

provides: "Except as specifically provided in the Sale Agreement or this Sale Order, the Buyers shall not assume or become liable for any Interests relating to the Purchased Assets or Shares being sold by the Sellers." Sale Order, ¶J.

Amphenol argues that when the Debtors sold all of their ownership interest in PCM to Amphenol, "free and clear" of all "Interests," the Debtors released and waived any ability to bring a bankruptcy preference claim against PCM. However, even construing the terms in the Sale Agreement and Sale Order broadly, as urged by Amphenol, I cannot agree. Amphenol's theory merges its interest as the sole shareholder of PCM with a direct interest in the assets and liabilities of PCM. It is an axiom of corporate law that "[t]he corporation is an entity, distinct from its stockholders even if the subsidiary's stock is wholly owned by one person or corporation." Buechner v. Farbenfabriken Bayer Aktiengesellschaft, 38 Del.Ch.490, 154 A.2d 684, 686-87 (1959).[7] Even assuming that the Sale Order language releases all of the Debtor's claims against Amphenol related to the purchase and ownership of the PCM stock, the Sale Order does not similarly release PCM - - a distinct, separate legal entity from Amphenol - - from liability. The Sale Order provided that the "Buyer" would not become liable for any Interests

---

choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, known or unknown, whether arising prior to, on or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Interests) other than the Closing Encumbrances and the claims and interests described in the last sentence of this Sale Order....

Sale Order, ¶J.

[7] A parent company does not hold the assets of a subsidiary and, absent fraud, is not liable for the debts of a subsidiary. See In re Murchison, 54 B.R. 721, 728 (Bankr.N.D.Tex. 1985)(Title to corporate property is held by a corporation, and not by the shareholder - - even a sole shareholder); SRI Int'l, Inc. v. Internet Security Systems, Inc., 2005 WL 851126, *2 (D.Del. April 13, 2005) citing United States v. Bestfoods, 524 U.S. 51, 61 (1998)( "A parent company is not liable for the actions of a subsidiary solely because it is a subsidiary.").

(including preferences)(Sale Order ¶J) and that the "Buyers" shall "have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets and Shares...." (Sale Order ¶16).  The term "Buyer" is defined in the Sale Order as Amphenol Corporation and Amphenol Technical Products International Co., not PCM.  PCM is not a "Buyer" and not a party to the Sale Agreement.[8]

Amphenol argues that reading the Sale Agreement and Sale Order as applying only to Amphenol and not to PCM renders the terms of those documents meaningless.  To the contrary, the Sale Order and the Sale Agreement continue to have meaning entirely consistent with the purpose of corporate law, contract law, and a sale under Bankruptcy Code §363, which permits a court to authorize a sale of a debtor's assets "free and clear" of any interest that an entity has in the property.  See, e.g., Folger Adam Security, Inc. v. DeMatteis/ MacGregor, JV, 209 F.3d 252, 257 (3d Cir. 2000).  For example, such a sale permits a buyer to take ownership of the property without concern that a creditor's lien continues to attach to the property (11 U.S.C. §363(f)(3)), or that a creditor will file suit against the buyer based on a successor liability theory.  See, e.g., In re TransWorld Airlines, Inc., 322 F.3d 283 (3d Cir. 2002).  This protection from the Debtor's creditors was given by the Sale Order, which continues to have meaning and purpose despite a reading that does not offer a waiver of bankruptcy preference claims against PCM.[9]

---

[8] Any potential §547 preference claim here did not "attach" to the Shares.  The alleged preference liability asserted is that of the transferee (PCM)(See §550(a)(1)), but is not a burden on the Shares themselves.  The Shares are not the subject of the Trustee's Preference Action.

[9] Alternatively, I cannot conclude that the term "preference" in the Sale Order includes the Debtor's or Trustee's bankruptcy preference claims against PCM.  The term "preference" included in the extensive list of items that make up the definition of the term "Interests" is more reasonably interpreted to mean other claims of a preferential right to the asset by third-party creditors under state law, contract or otherwise.
   Amphenol also argues that permitting such a claim is tantamount to seeking additional

13

Finally, Amphenol also argues that the Sale Order expressly preserved a number of claims (such as environmental claims and the right to enforce the COBRA requirements of Title I of ERISA, 29 U.S.C. §1161 *et seq.*), but does not expressly reserve the right to assert preference claims under chapter 5 of the Bankruptcy Code. The Trustee responds that the Debtor specifically carved out any right to recover such claims in the Sale Agreement, which provides:

> <u>Excluded Assets.</u>  Notwithstanding any provision herein to the contrary, the Sellers shall not sell, convey, assign, transfer or deliver to the Buyer Parties, and the Buyer Parties shall not purchase, and the Purchased Assets shall not include, the Sellers' right, title and interest to the following assets of the Sellers (the "Excluded Assets"):
> ....
> (d)	the Sellers' claims, causes of action, choses in action and rights of recovery pursuant to Sections 544 through 550 and Section 553 of the Bankruptcy Code, any other avoidance actions under any other applicable provisions of the Bankruptcy Code or the Canadian Bankruptcy Code and the claims, causes of action, choses in action and rights of recovery set forth on Schedule 2.3(d);

Sale Agreement, §2.3 at pp. 12-13. This provision specifically reserved the Debtor's ability to assert preference actions.[10]

Viewing all allegations in the complaint in a light most favorable to Amphenol, I conclude as a matter of law that the Sale Agreement and Sale Order do not provide for a waiver

---

consideration for the sale. I acknowledge that if this issue had been "on the table" at the time of the sale, the sale price may have been affected. With some sympathy for Amphenol's position, I nonetheless conclude that, while unfortunate, it is not relevant to this analysis.

[10]Amphenol also argues that it could not have known about the potential preference action as of the date of the Sale Agreement (December 15, 2002), because it was signed prior to the bankruptcy filing, which took place the next day. Amphenol further argues that the statement of financial affairs (Official Form 7) for co-debtor Precision Cable Mfg. Corp. (docket no. 172), which lists the payments totaling $1,176,582 made to PCM within 90 days prior to the bankruptcy filing, was not filed until January 23, 2003. However, these arguments do not change the result. Amphenol knew bankruptcy was imminent when negotiating the Sale Agreement (Plaintiff's Opposition to Defendant Trustee's Motion, p. 11), and could have reviewed the Debtor's financial records for the relevant time period. Moreover, it is not disputed that the Debtor's statement of financial affairs was filed prior to court approval of the sale.

or release of PCM from bankruptcy preference claims.  The Motion will be granted.  An appropriate order follows.

                                  BY THE COURT:

                                  KEVIN J. CAREY
                                  UNITED STATES BANKRUPTCY JUDGE

Dated: September 18, 2006